IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 11, 2026 Session

**IN RE PENELOPE S.**

**Appeal from the Juvenile Court for Shelby County**
**No. GG3945 W. Ray Glasgow, Magistrate**

_____

**No. W2025-00732-COA-R3-JV**

_____

The juvenile court magistrate denied Appellant/Father's petition for custody of the minor child on its finding that Tennessee was not the child's home state under the Uniform Child Custody Jurisdiction and Enforcement Act. Father filed a timely request for review by the juvenile court judge under Tennessee Code Annotated section 37-1-107(d)(1)(A). Because the trial court's order denying review fails to comply with section 37-1-107(d)(1)(E), it is vacated.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Vacated and Remanded**

W. MARK WARD, SR. J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Darrell D. Blanton, Memphis, Tennessee, for the appellant, Cody S.[1]

Shantell S. Suttle, Memphis, Tennessee, for the appellee, Bibi K.

**OPINION**

**I. Background**

Penelope S. (the "Child") was born in April of 2023, in Florida. The Child's parents, Appellant Cody S. ("Father") and Appellee Bibi K. ("Mother"), were never married. The case began on August 9, 2024, when the Child's paternal grandmother, Penny D. ("Grandmother"), a resident of Cordova, Tennessee, filed an emergency petition for

_____

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names to protect their identities.

custody of the Child in the Shelby County Juvenile Court ("trial court"). In her petition, Grandmother alleged that the Child had resided with her in Tennessee since November 19, 2023. Around that time, Mother and Father, who were living in Florida, allegedly became homeless and contacted Grandmother to take the Child. Grandmother flew to Florida and brought the Child back to Tennessee with her. According to Grandmother's emergency petition, Father returned to live in Tennessee on July 24, 2024. Mother remained in Florida.

On August 23, 2024, the juvenile court magistrate entered an ex parte temporary order granting custody to Grandmother. On October 24, 2024, Father filed an "Intervening Petition for Custody and Parenting Schedule and for Immediate Temporary Protective Custody Order." Therein, Father averred that: (1) "there has never been an original Order pursuant to Tenn. Code Ann. 36-6-106 entered regarding the Father's custody and parenting time in this cause"; (2) "the [] minor child has been living here in Shelby County, Tennessee with the Paternal Grandmother for more than six months preceding the filing of this Petition for Custody, and has been here as a resident of the state of Tennessee since November of 2023"; and (3) "the Father lives with the Paternal Grandmother and his [C]hild." Based on the foregoing, Father averred that Tennessee was the Child's "home state," and that jurisdiction in the trial court was proper under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). By order of October 25, 2024, the juvenile court magistrate granted Father temporary custody of the Child.

On October 28, 2024, Mother filed an "Emergency motion for clarification, to set aside order [granting temporary custody to Father] and[/or] to modify order." Therein, Mother argued that the trial court had only emergency jurisdiction, under Tenn. Code Ann. § 36-6-219, and could not exercise jurisdiction over custody arrangements because Tennessee is not the Child's home state. Accordingly, she asked that the Child be returned to her and that Father's intervening petition be dismissed. On the same day, Mother filed a response (and amended response) in opposition to Father's intervening petition. On October 28, 2024, the juvenile court magistrate conducted a preliminary hearing and held that the protective custody order would be sustained pending a full custody hearing on January 9, 2025. On November 12, 2024, the juvenile court magistrate entered an order denying Mother's emergency motion for clarification.

The January 9th hearing on Father's intervening petition was conducted by Zoom, and the parties were given an inaccurate link. Apparently, Mother called the clerk's office and was given the correct link; however, Father failed to attend. The magistrate did not allow the parties to present any evidence at the hearing before announcing its decision to deny Father's petition for lack of subject-matter jurisdiction. Rather, from our review of the 10 pages of transcript from those proceedings, the magistrate engaged in limited conversation with Mother and her attorney before informing Mother that, "[W]e don't need you to testify today. I just dismissed the petition . . . ." Despite the lack of evidence, on January 9, 2025, the juvenile court magistrate entered an order, finding that: (1) Tennessee was not the Child's home state; (2) it had no jurisdiction over custody (and, if it did, that it

- 2 -

would not exercise it under Tennessee Code Annotated section 36-6-222); and (3) Father had no standing to bring his petition. Father filed a timely request for review under Tennessee Code Annotated section 37-1-107(d)(1)(A). As discussed below, on April 22, 2025, the trial court judge entered an order adopting the magistrate's findings as set out in its January 9, 2025 order, and denied Father's petition. Thereafter, Mother filed a motion for return of custody, which the trial court granted by order of May 12, 2025. Father filed his notice of appeal on May 15, 2025.

## II. Issues

Father raises two issues as stated in his brief:

I. Whether the Trial Court erred by refusing to accept jurisdiction under the UCCJEA, T.C.A. § 36-6-201, et. seq.
II. Whether the Trial Court erred by determining Father lacked standing to file his Petition.

## III. Analysis

We do not reach the substantive issues in this appeal because the trial court's order does not comply with the requirements of Tennessee Code Annotated section 37-1-107(d)(1), which provides:

(A) A party may, within ten (10) days after entry of the magistrate's order, file with the court a written request for a review of the record by the juvenile court judge.
(B) The juvenile court judge shall not grant a review when the party requesting the review did not participate in the hearing before the magistrate in good faith.
(C) A review by the juvenile court judge is not a hearing and is limited to those matters for which exceptions have been filed.
(D) The juvenile court judge shall afford the magistrate's findings, conclusions, and recommendations a presumption of correctness. The judge shall modify the magistrate's findings only when, after review, the judge makes a written finding that an abuse of discretion exists in any or all of the magistrate's findings, conclusions, or recommendations.
(E) The judge shall issue written findings, conclusions, or recommendations, or may schedule the matter for a new hearing of any issues the judge deems necessary, with notice to all parties.

Tenn. Code Ann. § 37-1-107(d)(1). In the recent case of ***Barton v. Keller***, this Court addressed, as a matter of first impression, the duty imposed on the trial court by subsections (D) and (E), to-wit:

[T]his is the first case to directly address what duty is imposed by subsections (D) and (E) [of Tennessee Code Annotated section 37-1-107(d)(1)]. In resolving this issue, we keep in mind that "[t]he words used in a statute are to be given their natural and ordinary meaning, and, because 'words are known by the company they keep,' we construe them in the context in which they appear and in light of the general purpose of the statute." ***Wallace v. Metro. Gov't of Nashville***, 546 S.W.3d 47, 52 (Tenn. 2018) (quoting ***Lee Med., Inc. v. Beecher***, 312 S.W.3d 515, 526 (Tenn. 2010)). "Our 'overarching purpose in construing statutes is to ascertain and effectuate legislative intent, without expanding a statute beyond its intended scope.'" ***Funk v. Scripps Media, Inc.***, 570 S.W.3d 205, 219 (Tenn. 2019) (quoting ***Ray v. Madison Cnty.***, 536 S.W.3d 824, 831 (Tenn. 2017)).

Turning to the language of the statute, each of these subsections provides that the juvenile court judge "shall" make certain findings, conclusions or recommendations. Subsection (D)'s "written finding" provision is only applicable when the judge finds an abuse of discretion in the magistrate's ruling. Subsection (E), however, states that the juvenile court judge "shall" make "written findings, conclusions, or recommendations" without specifying that those findings or conclusions are required only when the magistrate's ruling is reversed. *See* ***Coleman v. State***, 341 S.W.3d 221, 241 (Tenn. 2011) ("Just as we may not overlook or ignore any of the words in a statute, we must be circumspect about adding words to a statute that the General Assembly did not place there." (internal citations omitted)). It therefore appears that subsection (D) applies irrespective of whether the magistrate's ruling is affirmed, reversed, or modified. *See* ***State v. Gibson***, 506 S.W.3d 450, 457 (Tenn. 2016) (noting that in construing statutory language, courts "are not free to alter, amend, or depart from the words of the statute" (citing ***Gleaves v. Checker Cab Transit Corp.***, 15 S.W.3d 799, 803 (Tenn. 2000))).

Moreover, Tennessee courts have repeatedly held that similar language in rules and statutes that a trial court "shall" make findings and conclusions or state legal grounds imposes a mandatory duty on ruling courts to do so. *See, e.g.*, ***Smith v. UHS of Lakeside, Inc.***, 439 S.W.3d 303, 313 (Tenn. 2014) (holding that Rule 56.04 of the Tennessee Rules of Civil Procedure, which states that the trial court "shall" state the legal grounds for granting or denying a motion for summary judgment, is mandatory); ***Burris v. Burris***, 512 S.W.3d 239, 254 (Tenn. Ct. App. 2016) (holding that Rule 52.01 of the Tennessee Rules of Civil Procedure, which states that trial courts "shall" make findings of facts and conclusions of law in bench trials, is mandatory); ***In re Glenn B. et al.***, No. M2023-00096-COA-R3-PT, 2023 WL 8369209, at *8 (Tenn. Ct. App. Dec. 4, 2023) (holding that Tenn. Code Ann. § 36-1-113(k), which states that the trial court adjudicating a petition to terminate parental rights "shall" make specific findings of fact and

conclusions of law, is mandatory).

When courts have such a mandatory obligation, "[s]imply stating the trial court's decision, without more, does not fulfill" that duty. *Gooding v. Gooding*, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015) (quoting *Barnes v. Barnes*, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *8 (Tenn. Ct. App. Oct. 24, 2012)). Instead, the trial court's ruling must explain how the court reached its decision. *See, e.g., UHS of Lakeside*, 439 S.W.3d at 314 (holding that a trial court's ruling on a summary judgment motion should be "adequately explained and . . . the product of the trial court's independent judgment"); *Gooding*, 477 S.W.3d at 782 ("While there is no bright-line test by which to assess the sufficiency of the trial court's factual findings, the general rule is that the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." (internal quotation marks and citation omitted)). Thus, while the April 2023 amendment to section 37-1-107(d) significantly reduced the juvenile judge's responsibilities upon rehearing,[2] it did not eliminate the duty to independently review the magistrate's ruling and make appropriate findings of fact, conclusions of law, or recommendations following that review. Indeed, in many ways, the duty imposed on the juvenile court judge is similar to the duty of this Court in adjudicating this appeal.

*Barton v. Keller*, No. W2024-00735-COA-R3-JV, 2025 WL 1091645, at *4-*5 (Tenn. Ct. App. April 8, 2025) (footnote omitted).

Turning to the record, Father's January 23, 2025 request for review is well-drafted and contains cogent substantive arguments concerning Father's position that the juvenile court magistrate misapplied the UCCJEA. In short, Father complied with the requirements of Tennessee Code Annotated section 37-1-107(d)(1)(A), which requires that any request for review "must include written exceptions to the magistrate's findings, conclusions, or recommendations, and specify the findings to which the party objects, the grounds for the objection, and the party's proposed findings, conclusions, or recommendations." Despite Father's tenable arguments, the trial court appears to have ignored them and simply rubber-

---

[2] As explained by the *Barton* Court, the procedure outlined in Tennessee Code Annotated section 37-1-107(d)(1)

was adopted by virtue of an April 2023 amendment to section 37-1-107. *See generally In re Henry W.H.*, No. W2023-01234-COA-R9-JV, 2024 WL 4824632, at *3 (Tenn. Ct. App. Nov. 19, 2024). Under the prior version of the statute, the juvenile court judge was required to conduct a de novo hearing following a request to rehear a magistrate's ruling. *Id.* (citing Tenn. Code Ann. § 37-1-107(d) (2022)).

*Barton*, 2025 WL 1091645, fn. 4.

stamped the magistrate's findings, thus violating the mandates of Tennessee Code Annotated section 37-1-107(d)(1)(E). The trial court's April 22, 2025 order denying Father's request for review provides only:

> This matter was brought for review pursuant to Tenn. Code Ann.§ 37-1-107(d) on a matter heard by a Magistrate on January 9, 2025.
> 1. Tenn. Code Ann. § 37-1-107(d) as amended provides that an abuse of discretion is the standard of review applied in whether a Magistrate's order should be set aside and a new hearing granted, or modified.
> 2. The review of the magistrate's findings, conclusions and recommendations shall be afforded a presumption of correctness and shall only be modified when the judge makes a finding of an abuse of discretion.
> 3. The judge shall issue written findings, conclusions, or recommendations or may schedule the matter for a new hearing of any issue the judge deems necessary with notice to all parties.
> 4. Upon review of the record and the findings of fact supporting the Magistrate's conclusions of law, the Court finds the relevant factors were considered and the correct legal standard applied. The Court incorporates the Magistrate's findings and conclusions of law and finds the Magistrate did not abuse his discretion.
>
> The Request for Review is DENIED.

The trial court's order is insufficient under this Court's holding in **Barton.** Although, at paragraph 3, the trial court correctly notes that "[t]he judge shall issue written findings, conclusions, or recommendations," the order does not satisfy this requirement. Furthermore, although the trial court correctly notes that it is to apply an "abuse of discretion [] standard of review" in determining whether the magistrate's findings were correct, the order neither cites nor applies the criteria applicable to discretionary decisions.[3]

---

[3] The Tennessee Supreme Court has explained:

> "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." [**Fisher v. Hargett**, 604 S.W.3d 381, 395 (Tenn. 2020)] (quoting **Harmon v. Hickman Cmty. Healthcare Servs., Inc.**, 594 S.W.3d 297, 305-06 (Tenn. 2020)). An abuse of discretion also occurs when a court "strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision." **Lee Med., Inc. v. Beecher**, 312 S.W.3d 515, 524 (Tenn. 2010) (citing **State v. Lewis**, 235 S.W.3d 136, 141 (Tenn. 2007)). "Whether the trial court applied an incorrect legal standard is a question of law and is reviewed de novo with no presumption of correctness." **Fisher**, 604 S.W.3d at 395. Questions of fact are reviewed de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d).

Furthermore, as noted above, the order does not address Appellant's arguments as set out in his request for review. More troubling is the trial court's adoption of the "Magistrate's findings and conclusions of law" without any explanation. As set out in context above, the trial court merely states that "the record and the findings of fact support[] the Magistrate's conclusions of law," and "the relevant factors were considered, and the correct legal standard [was] applied] [by the Magistrate]." As noted in *Barton*, "[s]imply stating the trial court's decision, without more, does not fulfill" the mandates of section 37-1-107(d)(1)(E). *Barton*, 2025 WL 1091645, at *5 (citations omitted). Here, the trial court's order does not indicate that its conclusion is the result of the court's "independent judgment" insofar as it fails to include any explanation of how the trial court reached its decision. *Id.* (citations omitted). Accordingly, we arrive at the same conclusion reached by the *Barton* Court:

> [T]he trial court in this case did not fulfill this duty, as it did nothing more than simply state its decision without explanation. Indeed, although Father filed a lengthy objection to the magistrate's ruling alleging a host of errors, the trial court's decision comprises only one sentence: "The Court has reviewed the magistrate's order, the pleadings and entire file and finds no abuse of discretion exists in any or all of the magistrate's findings, conclusions, or recommendations." Thus, the trial court's ruling contains a single unsupported conclusion and no factual findings of any kind. Moreover, the trial court's ultimate conclusion is not explained in any way. As a result, the trial court's decision does not comply with the mandatory language of section 37-1-107(d)(1)(E). Under these circumstances, we have held that it is often appropriate to vacate the judgment and remand to the trial court for the entry of a more detailed order. *See, e.g., UHS of Lakeside*, 439 S.W.3d at 314; *Trezevant v. Trezevant*, 568 S.W.3d 595, 623 (Tenn. Ct. App. 2018); *Parker* [*v. Shelby County Gov't Civil Service Merit Bd.*], 392 S.W.3d [603,] at 615 [Tenn. Ct. App. 2012)].

*Barton*, 2025 WL 1091645, at *5 (footnote omitted).

Before concluding, and in an effort to return the case to the trial court in the proper posture, we find it necessary to also vacate the trial court's May 12, 2025 "Order on Motion to Lift Stay" as it was entered following the trial court's denial of Father's petition for review, which decision we have vacated. Furthermore, given the fact that no evidence was adduced at the January 9, 2025 hearing before the magistrate, we strongly suggest, but do not mandate, that the trial court exercise its discretion to "schedule the matter for a new

---

*Black v. Strada*, 721 S.W.3d 223, 226 (Tenn. 2025).

hearing of any issue the judge deems necessary with notice to all parties." Tenn. Code Ann. § 37-1-107(d)(1)(E).

## V. Conclusion

For the foregoing reasons, the trial court's orders of April 22, 2025, and May 12, 2025, are vacated. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion, including entry of an order that complies with Tennessee Code Annotated section 37-1-107(d)(1)(E). Costs of the appeal are assessed one-half to the Appellant, Cody S., and one-half to Appellee, Bibi K. Execution for costs may issue if necessary.

s/ W. Mark Ward
W. MARK WARD, SENIOR JUDGE